IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

VIENNA METRO LLC,                    )
                                     )
                Plaintiff,           )
                                     )
v.                                   )      CASE NO.  1:10-cv-00502
                                     )                UNDER SEAL
PULTE HOME CORPORATION,              )
                                     )
                Defendant.           )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Vienna Metro LLC's ("Vienna Metro")

Motion for Attorneys' Fees and Expenses.  (Dkt. No. 206.)  This is a breach of contract case

involving a defendant that rarely conceded any issues throughout the lengthy process of

litigation.

There are four issues before the Court.  The first issue is whether Plaintiff Vienna

Metro's attorneys' fees represent a reasonable number of hours at a reasonable rate in litigating

its contract dispute against Defendant Pulte Home Corporation ("Pulte").  The second issue is

whether the Court should reduce the proposed amount of attorneys' fees where Vienna Metro

includes a reasonable cost reduction associated with its unsuccessful claims for damages.  The

third issue is whether Plaintiff's $439,111.09 in expenses related to this case are necessary and

reasonable.  The fourth issue is whether the Court should grant Plaintiff's full request for costs,

which include videotapes of depositions, postage and delivery charges incidental to depositions,

copies of exhibits to depositions, deposition costs of damages experts, pre-trial hearing transcript

costs, and the *pro hac vice* fees of Katherine A. Crytzer.

The Court grants Plaintiff's Motion for Attorneys' Fees and Expenses.  First, the Court holds that Vienna Metro is entitled to its requested attorney's fees in the amount of $4,137,345.00 because, in light of the *Johnson/Barber* factors, Vienna Metro has provided (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Second, the Court holds that it does not need to reduce the proposed amount of attorneys' fees because Vienna Metro applied a reasonable cost reduction for its unsuccessful claims for damages.  Third, the Court holds that Vienna Metro is entitled to its requested costs in the amount of $439,111.09 because these expenditures were necessary and reasonable.  Finally, the Court finds that Vienna Metro is entitled to the $29,967.54 itemized in its Bill of Costs because this amount is reasonable, and Defendant does not meet the burden of proving the impropriety of the costs alleged.

## I.     BACKGROUND

This case is about a construction company's breach of a multi-million dollar real estate contract.  Plaintiff Vienna Metro and Defendant Pulte entered into a contract to develop MetroWest.  On June 21, 2006, the parties executed the Declaration, which set forth the parties' contractual obligations in developing the MetroWest project.  (Def.'s Mot. Summ. J. ¶ 2.)  The Declaration bound Pulte to perform certain infrastructure work, including design, permitting, bonding, and construction over the entire project site within eighteen months of the Declaration's execution.  (Compl. ¶ 1; Def.'s Mot. Summ. J. ¶¶ 4, 8.)  Furthermore, the Declaration provided that:

> "[i]f any party defaults . . . in the performance of any of its . . . obligations . . . and fails to cure such default within thirty (30) days after written notice (a 'Default Notice') from the [Non-Defaulting Party], then the Non-Defaulting Party . . . shall be entitled to all the remedies that are available at law or in equity, including, without limitation, specific performance . . . ."

(Declaration § 5.1.1.)  In December 2007 and January 2008, Vienna Metro sent Pulte default notices for failing to complete its required work by the appropriate date.  (*E.g.*, Def.'s Mot. Summ. J. ¶ 8.)

On May 14, 2010, Plaintiff filed a complaint in this Court.  (Compl. at 17.)  In addition to a claim for specific performance, Plaintiff alleged that Pulte breached the Parties' contract, and that it was entitled to monetary damages for real estate taxes, lost interest, and lost return on equity investment.  (*See generally*, Pl.'s Opp'n Def.'s Mot. Summ. J.)  Alternatively, Plaintiff sought monetary damages for default interest and wasted costs.  (*See generally id.*)

On February 11, 2011, the Parties filed cross-motions for summary judgment.  (Dkt. Nos. 85-86.)  On March 29, 2011, the Court granted Plaintiff's Motion for Partial Summary Judgment and determined that (1) Pulte's affirmative defenses to breach of contract failed as a matter of law, and (2) Pulte materially breached the contract.  (Mar. 29, 2011 Order at 7-12.)  The Court further granted in part Defendant's Motion for Summary Judgment, holding that Vienna Metro could not recover for breach of contract because it could not prove damages.  (*Id.* at 12.)  The Court held that Vienna Metro "is entitled to attorney's fees as a result of the breach of contract. . . . According to the Declaration, the Non-Defaulting party is entitled to 'recovery of reasonable legal fees and costs of collection' against the Defaulting Party." (*Id.* at 21.)

On May 6, 2011, the Court conducted a four-day nonjury trial.  On May 25, 2011, the Court issued its ruling, holding that "(1) specific performance is an adequate remedy, (2) the Parties contractually agreed to this remedy, and (3) the balance of equities falls in Plaintiff's favor."  (Mem. Op. & Final J. Order at 20.)

On June 6, 2011 Vienna Metro filed this Motion for Attorney's Fees and Costs.  (Dkt. No. 206.)  Vienna Metro calculated its attorneys' fees at $4,804,200.  (Vienna Metro's Mem.

Supp. Mot. Attorneys' Fees & Expenses at 1) ("Pl.'s Mot. Attorneys' Fees & Expenses".)

Vienna Metro then reduced its counsel's hourly rates by five percent to account for the billing

rates of other top firms in Northern Virginia, thus yielding $4,563,990 in attorneys' fees.  (*Id.* at

2.)  Thereafter, Vienna Metro added $33,060 for contract attorneys' fees, thus producing a

lodestar figure of $4,597,050.  (*Id.*)  Finally, Vienna Metro subtracted ten percent of the lodestar

figure because of its unsuccessful claim for damages, which the Court rejected on Defendant's

Motion for Summary Judgment.  (*Id.*; Mar. 29, 2011 Order at 12.)  Therefore, Vienna Metro

ultimately requests attorneys' fees in the amount of $4,137,345.  (Pl.'s Mot. Attorneys' Fees and

Expenses at 2.)  Vienna Metro also requests a $439,111.09 reimbursement for expenses related

to the following: scanning, printing, copying, electronic storage, computer database research,

technology support, electronic discovery vendors, scanning and imaging vendors, prior Pulte

reimbursements, and liability experts.  (*Id.*)  Therefore, Vienna Metro requests a total of

$4,576,456.09 in attorneys' fees and costs.  (*Id.*)

Plaintiff has submitted two expert declarations from Messrs. Craig Reilly and Sean

Murphy, attorneys who practice litigation in Northern Virginia and in the Eastern District of

Virginia, who confirm that Plaintiff's counsel's[1] rates are reasonable and comparable to those at

comparable law firms in Northern Virginia.  (*Id.* at 3-4.)  This Motion is now before the Court.

## II.    STANDARD OF REVIEW

Traditionally, under the "American Rule," parties are responsible for their attorneys' fees.

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975).  However, an

---

[1] Plaintiff's counsel are employed by Washington D.C. law firm Kirkland & Ellis LLP ("Kirkland").  Messrs. Murphy and Reilly opined about Kirkland's rates, comparing them to top firms in Northern Virginia.

exception to this rule is when attorneys' fees are provided by statute or a fee shifting provision in

a contract. *Textron Fin. Corp. v. AIC of Manassas, Inc.*, No. 1:09cv1202, 2010 WL 2928789, at

*3 (E.D. Va. 2010). Another exception to the requirement that attorneys' fees be proved at trial

"is where [a] contract provides for recovery of attorneys' fees by the prevailing party." *Kraft*

*Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006). To

determine the appropriate amount of attorney's fees, "a court must first determine a lodestar

figure by multiplying the number of reasonable hours expended times a reasonable rate."

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. Mills*

*Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). In determining the reasonableness of the number of

hours and rate, the district court should be guided by the following twelve *Johnson/Barber*

factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience, reputation and
> ability of the attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorney's fees awards in
> similar cases.

*Id.* at 243-44 (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978))

(explaining that the Fourth Circuit has adopted the twelve factors set forth in *Johnson v. Ga.*

*Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). Second, the court then "subtracts the fees

for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Lastly, "[o]nce

the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some

percentage of the remaining amount, depending on the degree of success enjoyed by the

plaintiff." *Id.* (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 321 (4th Cir. 2008)) (alteration in original).

## III.    ANALYSIS

The Court grants Vienna Metro's Motion for Attorneys' Fees and Costs in the total amount requested of $4,576,456.09.  The Court finds that $4,137,345 in attorneys' fees is appropriate because, in light of the *Johnson/Barber* factors, Vienna Metro has provided sufficient documentation of  (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Moreover, the Court also holds that it does not need to apply a separate reduction for Vienna Metro's unsuccessful damages claim because Plaintiff has reasonably excluded this claim from its request for fees.  The Court also awards $439,111.09 in costs because this amount is reasonable.  Finally, the Court holds that Vienna Metro is entitled to the $29,967.54 in its Bill of Costs because Defendant does not meet the burden of proving the impropriety of the costs alleged.  Each issue will be discussed in turn.

### A.  Vienna Metro's Lodestar Figure is Reasonable

The Court holds that $4,137,345 in attorneys' fees is appropriate because, in light of the *Johnson/Barber* factors, Vienna Metro has provided sufficient documentation of (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Each issue will be discussed in turn.

#### 1.  *Vienna Metro Has Provided a Reasonable Amount of Hours Spent on its Successful Claim*

Vienna Metro has provided sufficient evidence demonstrating  a reasonable amount of hours spent on its successful claim because the relevant *Johnson/Barber* factors weigh in Vienna Metro's favor.  The first step in establishing whether attorneys' fees are reasonable is to

"determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 244 (4th Cir. 2009).  In determining the reasonableness of the number of hours and rate, the district court should be guided by the twelve *Johnson/Barber* factors listed above. *Id.* at 243-44.  A court is not obligated to consider each and every factor individually, but rather, the "determination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate." *Id.* at 244 (citing *Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622 (4th Cir. 2007)).  Moreover, some of the twelve factors will frequently overlap. *See, e.g.*, *Nahigian v. Juno-Loudoun, LLC*, No. 1:09cv725, 2010 WL 4623895, at *10 (E.D. Va. Nov. 5, 2010) (analyzing the second, third, and ninth factors together).

The attorney fee applicant is charged with the duty of "submit[ting] evidence supporting the hours worked and rates claimed.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "In addition to the attorney's own affidavits, the fees applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)).  Specific evidence that is "sufficient to verify the prevailing market rates [includes] affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson*, 560 F.3d at 245.

The Court holds that the first and eighth *Johnson*/*Barber* factors establish that Vienna Metro has provided sufficient evidence supporting its request for a reasonable number of hours for its attorneys' work in its successful claims.  Each factor will be discussed in turn.

### a.  Time and Labor Expended

First, the Court holds that Vienna Metro's proposed lodestar figure includes a reasonable number of hours because the hours billed were a direct result of Pulte's actions.  The first *Johnson*/*Barber* factor, time and labor expended, weighs in favor of Vienna Metro.  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Id.*

The Court holds that the amount of hours is reasonable in light of the circumstances because Vienna Metro has submitted sufficient evidence documenting the many hours that it invested in litigating this matter, and the high number of hours is justified because of Defendant's failure to cooperate before and during the litigation process.  First, Vienna Metro sent three separate default notices to Pulte, and Pulte failed to cooperate despite its eventual admission that it "failed to complete all of its work within eighteen months after the [E]ffective [D]ate."  (Mem. Order 5.)  Second, Pulte listed thirteen affirmative defenses for breaching the Declaration, even though it knew that it had made a business decision to breach its obligations.  (Mem. Op. & Final J. Order at 22.)  Had Pulte admitted that it breached the Declaration because of the potential $30,000,000 savings, Vienna Metro's attorneys' fees and costs would have been greatly reduced.  Third, Pulte's discovery filings were broad and inconvenient because they consisted of over 39,000 records and were served three months after the close of discovery.  (Clare Decl. ¶¶ 40, 45.)  These inconvenient discovery filings forced Vienna Metro to expand its

8

litigation team in preparation for trial.  (*Id.* at ¶ 46.)  Fourth, Vienna Metro successfully moved *in limine* on six categories of evidence.  (Apr. 14, 2011 Order.)  Finally, Pulte's method of trying this case further expanded the amount of time and labor utilized by Plaintiff's litigation team. For example, Pulte (1) submitted 1,061 potential exhibits at trial; (2) listed more than 140 potential witnesses for trial; and (3) issued fourteen trial subpoenas.  Therefore, Pulte's litigation approach forced Vienna Metro to expend unnecessary amounts of time and labor preparing to cross-examine many witnesses who were not called to testify and to study over 1,000 trial exhibits that were not introduced into evidence.

The Court rejects Defendant's objections to the number of hours Kirkland has requested. Defendant attempts to refute Kirkland's claim that it invested 2,121.75 hours in this case during only one month because this amount is unreasonably high for "preparing for the equivalent of a two-day bench trial."  (Def.'s Opp'n Mot. Attorneys' Fees and Expenses at 10.)  As stated above, Defendant overlooks the fact that Plaintiff had to prepare for (1) a four-day trial; (2) a dozen witnesses subpoenaed by Defendant; (3) successful briefing of six motions *in limine*; and (4) over 1,000 trial exhibits listed in Pulte's pretrial disclosures.  The Court finds that Plaintiff's litigation team expended a reasonable amount of time and labor because the hours were a direct result of Pulte's actions.

*b.  Amount in Controversy and Results Obtained*

The Court holds that the amount in controversy and results obtained do not require reducing the attorneys' fees and costs because Plaintiff has demonstrated reasons supporting their claim for  the amount  in controversy and Plaintiff achieved a substantial measure of success litigating these claims.  The eighth *Johnson/Barber* factor is "the amount in controversy and the results obtained."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.

2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). At the outset, it is important to note that this litigation involved a $100 million dollar development at the Vienna Metro Station, one of the most prime locations under development in Northern Virginia. This litigation concerned Pulte's business judgment to breach the parties' joint development agreement, holding the MetroWest commercial development in virtual limbo and abehyance for four years while Pulte pursued its own aims. Pulte claims that Vienna Metro's relative success in this litigation is limited because it did not prevail on its damages claim and only prevailed on its claim for specific performance. (Def.'s Opp'n Mot. Attorneys' Fees & Expenses at 26.) Pulte's understates the significance of MetroWest's success in this matter.

Defendant's argument fails because Plaintiff succeeded on its claim for specific performance after extensive discovery and comprehensive motions practice. Defendant overlooks that (1) Vienna Metro successfully moved for summary judgment on eight of Pulte's affirmative defenses; (2) Defendant's other affirmative defenses failed at trial; (3) Plaintiff presented evidence at a four-day trial; (4) Plaintiff prepared to cross-examine over a dozen witnesses who did not testify and studied over 1000 trial exhibits that were not introduced into evidence; and (5) the Court adopted a substantial amount of Plaintiff's proposed Specific Performance Order. These are only a few of the obstacles Vienna Metro faced in this case and in attempting to persuade the Court to grant a unique remedy like specific performance. Because Vienna Metro was successful in this present action when the Court granted specific performance, the amount of hours submitted by Plaintiff are reasonable despite Plaintiffs' unsuccessful claim for damages. Accordingly, the Court holds that Plaintiff has demonstrated that the billed hours it included in its request are reasonable and pertain to its successful claim.

### 2. *Vienna Metro has Submitted a Reasonable Rate for its Fees*

The Court holds that Plaintiff's proposed lodestar figure also includes a reasonable rate because (1) two expert declarations demonstrate the reasonableness of the rates in comparison to Northern Virginia rates for comparable work and (2) the relevant *Johnson/Barber* factors weigh in Vienna Metro's favor. Each issue will be discussed in turn.

#### a. *Mr. Murphy and Mr. Reilly's Declarations Demonstrate the Reasonableness of Vienna Metro's Rates*

The Court holds that Plaintiff has provided sufficient evidence regarding the reasonableness of its rates because Mr. Murphy and Mr. Reilly's declarations establish that each attorney is familiar with the work of the lead attorneys in this case and that Vienna Metro's requested rates are reasonable according to the prevailing market rate in Northern Virginia. "In addition to the attorney's own affidavits, the fees applicant must produce satisfactory 'specific evidence of the prevailing market rates in the relevant community' for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)). Specific evidence that is "sufficient to verify the prevailing market rates [includes] affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 245 (4th Cir. 2009).

Vienna Metro has submitted the declarations of Messrs. Craig C. Reilly and Sean F. Murphy, two experts who are familiar with this case and practice in the Eastern District of Virginia. (Murphy Decl. ¶ 3; Reilly Decl. ¶ 3.) Sean F. Murphy has litigated contract and tort claims in commercial cases, fiduciary disputes, patent infringement cases, and government contract actions in over seventy-five cases before the Court. (Murphy Decl. ¶ 3.) He is also currently the President-elect of the Northern Virginia Chapter of the Federal Bar Association and

has taught sessions on "Ethics and Professionalism in Discovery." (*Id.* ¶ 4.) Craig C. Reilly has appeared before the court over one-hundred times and has over twenty-five years of experience litigating in many legal areas, including contracts, real estate, and commercial law. (Reilly Decl. ¶ 5; *id.* at Ex. 1.) Moreover, Mr. Reilly surveyed the rates offered by Northern Virginia firms capable of handling this type of complex litigation and compared Kirkland's rates offered in this case. (Reilly Decl. ¶ 12.) Mr. Reilly concluded that, after applying the five percent discount that Kirkland deducted in this case, the firm's rates fall "well within the applicable prevailing rate ranges." (*Id.* ¶ 17.) Mr. Reilly submits the following findings:

2010 Range of Hourly Rates in Northern Virginia

| Paralegal | 1-3 [years of experience] | 4-7 [years of experience] | 8-10 [years of experience] | 11-19 [years of experience] | 20+ [years of experience] |
|---|---|---|---|---|---|
| $120-340 | $250-415 | $350-515 | $415-570 | $520-675 | $505-810 |

2011 Range of Hourly Rates in Northern Virginia

| Paralegal | 1-3 [years of experience] | 4-7 [years of experience] | 8-10 [years of experience] | 11-19 [years of experience] | 20+ [years of experience] |
|---|---|---|---|---|---|
| $130-350 | $250-435 | $350-600 | $465-640 | $520-770 | $505-820 |

Kirkland & Ellis LLP Timekeepers' Hourly Rates

| [Attorney] | Experience (in years) | 2010 Rate Actual | 2010 Rate 5% Discount | 2011 Rate Actual | 2011 Rate 5% Discount |
|---|---|---|---|---|---|
| Jeff Willian | 25 | $685 | $651 | $725 | $689 |
| Tom Clare | 16 | $625 | $594 | $700 | $665 |
| Julie Posteraro | 7 | $525 | $499 | $550 | $532 |
| Rebecca Koch | 6 | $495 | $470 | $550 | $523 |

12

| Elizabeth Locke | 6 | $495 | $470 | $550 | $523 |
|---|---|---|---|---|---|
| Kate O'Scannlain | 6 | $495 | $470 | $560 | $523 |
| Katie Crytzer | 2 | $295 | $280 | $385 | $366 |
| Kim Chervenak | Sr. Legal Asst. (23 years) | $270 | $257 | $290 | $276 |
| Jennifer Shedlosky | Legal Assist. (1 year) | $155 | $147 | $165 | $157 |

(*Id.* at 17.)  Mr. Murphy and Mr. Reilly have concluded that Kirkland's hourly rates are reasonable and coincide with the prevailing market rates offered by Northern Virginia firms capable of handling "a case of this magnitude and complexity."  (Murphy Decl. ¶ 10; Reilly Decl.¶ 11.)

The Court finds Mr. Murphy and Mr. Reilly's Declarations satisfactory in establishing the reasonableness of the market rate in the relevant community of Northern Virginia because (1) Mr. Reilly's Declaration demonstrates his knowledge and experience with attorney fee rates for similar services in Northern Virginia, and (2) Mr. Murphy has shown his ethical expertise and experience litigating similar matters before the Court.  Moreover, Vienna Metro's fees are reasonable because Plaintiff has voluntarily reduced its attorneys' hourly rates by five percent. Accordingly, Plaintiff has provided sufficient evidence regarding the reasonableness of its rates because Mr. Murphy and Mr. Reilly's declarations establish that Vienna Metro's requested rates are reasonable according to the prevailing market rate in Northern Virginia.

    b. *Vienna Metro's Submitted Hours Are Reasonable in Light of the Twelve Johnson/Barber Factors*

   The Court holds that Vienna Metro's requested fees are reasonable because the second, third, fifth, ninth, and eleventh *Johnson/Barber* factors weigh in favor of Plaintiff.  These factors will be discussed in turn.

    i. *The Novelty and Difficulty of the Questions Raised*

   The Court holds that the second *Johnson/Barber* factor weighs in favor of Vienna Metro because this case involved a complex real estate contract and lengthy litigation.  The second *Johnson/Barber* factor is the "novelty and difficulty of the questions raised." *Robinson*, 560 F.3d at 243.  The Court finds that this factor supports the reasonableness of Kirkland's rates because this case involved a complex real-estate contract and a four-day nonjury trial.  According to Mr. Murphy and Mr. Reilly, few firms are capable of handling this type of case.  Accordingly, the second *Johnson/Barber* factor weighs in favor of Plaintiff.

    ii. *The Skill Required to Perform the Legal Services Rendered*

   The Court holds that the third *Johnson/Barber* factor also weighs in favor of Vienna Metro because this case required attorneys with particular skills in litigation.  The third *Johnson/Barber* factor is the "skill required to perform the legal services rendered." *Id.*  The Court finds that this factor supports the reasonableness of Kirkland's rates because Kirkland is one of the skilled firms capable of rendering the type of legal services involved in this case.  Vienna Metro's lead counsel, Thomas A. Clare, P.C. and Jeffrey L. Willian, P.C., have litigated for a combined period of over forty years.  (Pl.'s Mot. Attorneys' Fees & Expenses at 13.)  This experience was particularly helpful in a case involving a complex real estate contract and a four-day nonjury trial.  Accordingly, the Court finds that the third *Johnson/Barber* factor weighs in favor of Plaintiff.

### iii.   The Customary Fee for Like Work

The Court holds that the fifth *Johnson/Barber* factor also weighs in favor of Plaintiff because Mr. Reilly's survey demonstrates that a law firm similarly competent in complex real estate litigation charges comparable rates.  The fifth *Johnson/Barber* factor is "the customary fee for like work."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The Court finds that this factor supports the reasonableness of Kirkland's rates because Mr. Murphy and Mr. Reilly's Declarations demonstrate that Plaintiff's attorneys' fees are reasonable and comparable to the prevailing market rates in Northern Virginia.  Moreover, Vienna Metro decreased its attorneys' hourly rates by five percent in recognition that Washington, D.C. firms' hourly rates are sometimes higher than the prevailing rates in Northern Virginia.  (Pl.'s Mot. Attorneys' Fees & Expenses at 17.)  Accordingly, the Court finds that the fifth *Johnson/Barber* factor weighs in favor of Plaintiff.

### iv.   The Experience, Reputation, and Ability of the Attorney

The Court holds that the ninth *Johnson/Barber* factor also weighs in favor of Plaintiff because Plaintiff's litigation staff is experienced and reputable.  The ninth *Johnson/Barber* factor is "the experience, reputation and ability of the attorney."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The Court finds Kirkland's fees reasonable under this factor because, as stated above, Plaintiff's head litigators have a combined experience of over forty years handling complex real estate litigation.  Moreover, the Declarations of Mr. Murphy and Mr. Reilly have highlighted Kirkland's reputation and ability to handle these types of cases.  Accordingly, the Court finds that the ninth *Johnson/Barber* factor weighs in favor of Plaintiff.

>                 *v.  The Nature and Length of the Professional Relationship*
>                      *between Attorney and Client.*

The Court holds that the eleventh *Johnson/Barber* factor also weighs in favor of Plaintiff

because Kirkland has a longstanding relationship with Vienna Metro.  The eleventh

*Johnson/Barber* factor is "the nature and length of the professional relationship between attorney

and client."  *Robinson*, 560 F.3d at 243.  The Court holds that Vienna Metro's fees are

reasonable in light of its relationship with Kirkland.  Vienna Metro is an affiliate of Clark Realty

Capital.  (Pl.'s Mot. Attorneys' Fees & Expenses at 13.)  Kirkland first represented Clark in 2002

and has handled many of Clark's significant litigation matters since that date.  (*Id.*)  Therefore,

the Court finds that the nature and length of the professional relationship between these parties

weighs in favor of the reasonableness of Vienna Metro's rates.

Accordingly, Plaintiff's lodestar calculation is reasonable because, in light of the

*Johnson*/*Barber* factors, Vienna Metro has provided (1) a reasonable number of hours spent

working on its successful claim and (2) sufficient evidence as to the reasonableness of its

requested rates.

## B.  The Court Does Not Have to Reduce the Award Because Vienna Metro Has Already Applied a Reasonable Deduction for its Unsuccessful Claim for Damages

The Court finds that a reduction is not needed for unsuccessful and unrelated claims

because Vienna Metro has excluded such claims from its request.  Once a court has determined

the reasonableness of the lodestar figure, "the 'court . . . should subtract fees for hours spent on

unsuccessful claims unrelated to successful ones.'" *Robinson v. Equifax Info. Servs., LLC*, 560

F.3d 235, 245 (4th Cir. 2008) (quoting *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir.

2002)).  When successful and unsuccessful claims are related, "[m]uch of counsel's time will be

devoted generally to the litigation as a whole, making it difficult to divide the hours expended on

a claim-by-claim basis." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  This occurs when separate claims contain a "common core of facts."  *Id.*

Here, the Court finds that all claims in this action were unified by a common core of facts pertaining to Pulte's breach of the Declaration.  The hours spent on Vienna Metro's successful claim for specific performance are thus difficult to isolate because of this claim's relation to the claim for damages.  Vienna Metro applied a ten percent reduction for its unsuccessful claim for damages.  (Pl.'s Mem. Attorneys' Fees 2.)  In doing so, it relied on Judge Cacheris' opinion in *Signature Flight Support Corp. v. Landow Aviation Ltd. Partnership*, 730 F. Supp. 2d 513 (E.D. Va. 2010), where the Court applied a ten percent reduction to account for the plaintiff's failure to collect monetary damages despite prevailing on its injunctive goals.  *Id.* at 529.  In *Signature Flight*, the plaintiff alleged five counts: (1) declaratory judgment, (2) breach of contract, (3) intentional interference with contract, (4) accounting and disgorgement, and (5) permanent injunctive relief.  *Id.* at 516.  The parties went to trial, despite their initial suggestion that they would attempt to settle the case.  *Id.* at 517.  The Court found in favor of defendant as to the claim for breach of contract because plaintiff could not prove damages.  *Id.*  Defendant also prevailed on the claim for accounting and disgorgement, but lost on plaintiff's request for declaratory judgment and permanent injunction, and on its own counterclaims for declaratory judgment.  *Id.*  The Court noted "that [p]laintiff . . . did not recover damages for its breach of contract claim based on its failure to prove the amount of damages with reasonable certainty and that [p]laintiff did not win the relief of accounting and disgorgement."  *Id.* at 519.  However, the court recognized plaintiff succeeded because it "established that [d]efendant ha[d] breached . . . , won all remaining claims it brought against [d]efendant with the exception of accounting and disgorgrement, and . . . . successfully defended against all affirmative defenses."  *Id.*  The Court

ultimately awarded $1,130,843 in attorneys' fees after it applied a ten-percent reduction from

plaintiff's final lodestar amount.  *Id.* at 528.  The Court noted that establishing breach was

essential for both the declaratory relief and injunctive claims and, even though plaintiff did not

recover $4,167,910 in damages connected to defendant's breach, it had a significant amount of

success in the litigation.  *Id.* at 528-29.

The Court is persuaded by Plaintiff's comparison of the present case to *Signature Flight*

for three reasons.  First, as in *Signature Flight*, Plaintiff's recovery was limited by its failure to

recover damages.  Second, in both cases the plaintiff prevailed on all of the affirmative defenses

alleged by their adversary.  Third, in both cases the plaintiffs alleged claims "involving a

common core of facts" because they had to prove breach in order to earn declaratory or

injunctive relief.  *See id.* at 528.  Accordingly, the Court finds that Plaintiff's ten-percent lodestar

reduction is reasonable.

Defendant argues that a ten percent reduction is insufficient and that a forty-percent

lodestar reduction is more appropriate.  First, Defendant's reliance on *Nahigian v. Juno-*

*Loudoun, LLC*, No. 1:09cv725, 2010 WL 4623895 (E.D. Va. Nov. 5, 2010) is misplaced.  In that

case, Judge Cacheris reduced the lodestar amount by forty percent after he recognized that

> [i]n the instant case, the unsuccessful claims were fraud and [Virginia Consumer
> Protection Act] claims against Defendant and Ritz and ILFSDA claims against
> Ritz.  Defendant argues that the fraud and ILFSDA claims are distinctly different
> claims that are based on different facts and legal theories. . . .  Defendant points
> out that a sizeable portion of the requested fee was accumulated before Plaintiffs
> amended their complaint to add the ILFSDA claims. . . .  Plaintiffs' successful
> ILFSDA claim was based on faulty disclosure and not on fraud, and its legal
> elements were different from those in its fraud and VCPA claims.

*Id.* at *14.  Defendant ignores that our case is different because Plaintiff was required to prove

that Defendant breached the contract to prevail on its claim for specific performance or damages.

Therefore, irrespective of Plaintiff's claim for damages, Plaintiff would have had to prove that Defendant breached the Declaration.

Moreover, Defendant's reliance on *Lilienthal v. City of Suffolk*, 322 F. Supp. 2d 667 (E.D. Va. 2004), is also misplaced.  In *Lilienthal*, Judge Smith reduced a lodestar calculation by forty percent after she noted that the plaintiffs had initially alleged constitutional violations, sought an injunction, and requested compensatory and punitive damages.  *Id.* at 675.  Plaintiffs' success in *Lilienthal* was "less than total" because they settled the case and, in doing so, significantly departed from their "long-entrenched position[]."  *Id.*  This case is different because Plaintiff only failed in its claim for damages and had to endure a long process that included a four-day trial before earning the remedy of specific performance.

Finally, Defendant's comparison to *Quantum Systems Integrators, Inc. v. Sprint Nextel Corp.*, No. 1:07-cv-491, 2009 WL 3423848 (E.D. Va. Oct. 16, 2009) lacks merit.  In *Quantum Systems*, the Court reduced a lodestar calculation by forty percent after entering a final judgment of $69,600, an amount much less than the plaintiff's original demands in excess of $1,400,000. *Id.* at 1.  Moreover, *Quantum Systems* also involved an unsuccessful fraud claim, a contrast to the present case.  *Id.*

None of these cases involved the factual scenario from our case: (1) a defendant who was going to present 140 witnesses; (2) a defendant who threatened to introduce more than 1,000 potential trial exhibits; (3) a prevailing party that successfully filed six motions *in limine*; and (4) a dispute over a complex real estate agreement.  Therefore, the Court finds that a reduction is not needed for Plaintiff's failed damages claim because Plaintiff has already appropriately considered this claim in its request for attorneys' fees.

### C.  Vienna Metro's Expenses Are Reasonable

The Court holds that Vienna Metro's total expenses of $439,111.09 are reasonable under the circumstances.  "Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ."  *Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 623-24 (4th Cir. 1978).

Here, Defendant objects to Kirkland's (1) scanning, printing and copying; (2) electronic data storage; (3) computer database research; and (4) use of an electronic discovery vendor. (Def.'s Opp'n Mot. Attorneys' Fees & Expenses 29.)  Defendant posits that these expenses were unreasonable and that the Court should apply a deduction between forty percent of the requests for expenses and the $353,780.42 total of these categories of expenditures.  However, these expenditures are reasonable and necessary in such a multi-million dollar dispute because they provide efficient means of producing the documents required in complex real estate litigation. Accordingly, the Court holds that $439,111.09 is a reasonable amount under the circumstances.

### D.  Vienna Metro is Entitled to the $29,967.54 in its Bill of Costs

Plaintiff is entitled to the $29,967.54 in taxable costs because Defendant does not meet the burden of proving the impropriety of the costs alleged.  Under the Federal Rules of Civil Procedure, "costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Therefore, the rule creates a presumption that the Court will award costs to the prevailing party. *Teague v. Bakker*, 35 F.3d 978, 996 (4th Cir. 1994).  Title 28 of the United States Code further enumerates the following items which a court may tax as "costs" under Rule 54:

1)  Fees of the clerk and marshal;

2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

3) Fees and disbursements for printing and witnesses;

4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

5) Docket fees under section 1923 of Title 28; and

6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2006).  "Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the burden is on the losing party to show impropriety of an allowance." *Cofield v. Crumpler*, 179 F.R.D. 510, 514 (E.D. Va. 1998).  *Pro hac vice* fees fall within the first category of "fees of the Clerk."  *Synergistic Int'l L.L.C. v. Korman*, No. 2:05cv49, 2007 WL 517676, at *2 (E.D. Va. Feb. 8, 2007).  Moreover, "costs of a deposition are taxable when a deposition is used at trial, or 'when the taking of a deposition is reasonably necessary at the time of its taking.'"  *Cofield*, 179 F.R.D. at 517.  A deposition is necessary if it is "relevant and material for the preparation in the litigation."  *Ford v. Zalco Realty Inc.*, 708 F. Supp. 2d 558, 562 (E.D. Va. 2010).  A deposition is not required to be used at trial in order to qualify under 28 U.S.C. § 1920(2).  *Cofield*, 179 F.R.D. at 518.

Defendant argues that the Court should exclude the following costs from Plaintiff's Bill of Costs:

| | |
|---|---|
| Videotapes of depositions | $10,848.75 |
| Postage/delivery charges incidental to depositions | $791.40 |
| Copies of Exhibits to depositions | $805.00 |
| Deposition costs of damages experts | $2,657.48 |
| Pre-trial hearing transcript costs | $237.65 |
| *Pro hac vice* fees of Katherine A. Crytzer | $50.00 |
| **Total exclusions** | **$15,390.28** |

(Def.'s Objections Vienna Metro's Bill of Costs 1.)  First, the Court finds that the *pro hac vice* fees of Katherine A. Crytzer are appropriately included in Vienna Metro's Bill of Costs because they are fees of the clerk under 28 U.S.C. § 1920, and Defendant fails to meet its burden of demonstrating why this fee should be excluded.  Second, the Court finds that the (1) videotapes of depositions, (2) postage and delivery charges incidental to depositions, (3) copies of exhibits to depositions, (4) deposition costs of damages experts, and (5) pre-trial hearing transcript costs should also be included in Vienna Metro's Bill of Costs because these costs are incident to the depositions that were necessarily obtained for use in this case, and Defendant has failed to meet its burden of proving that Plaintiff should not be entitled to these costs.  Accordingly, the Court finds that Vienna Metro is entitled to the $29,967.54 itemized in its Bill of Costs because this amount is reasonable and Defendant does not meet the burden of proving the impropriety of the costs alleged.

## IV.    CONCLUSION

For all of the above reasons, the Court grants Plaintiff's Motion for Attorneys' Fees and Expenses.  First, the Court holds that Vienna Metro is entitled to its requested attorney's fees in the amount of $4,137,345.00 because, in light of the *Johnson/Barber* factors, Vienna Metro has provided (1) a reasonable number of hours spent working on its successful claim and (2) sufficient evidence as to the reasonableness of its requested rates.  Second, the Court also holds that it does not need to reduce the proposed amount of attorneys' fees because Vienna Metro applied a reasonable cost reduction for its unsuccessful claims for damages.  Third, the Court holds that Vienna Metro is entitled to its requested costs in the amount of $439,111.09 because this amount is reasonable in light of the circumstances.   Finally, the Court holds that Vienna Metro is entitled to the $29,967.54 itemized in its Bill of Costs because this amount is

reasonable, and Defendant does not meet the burden of proving the impropriety of the costs alleged.

Accordingly, it is hereby

ORDERED that Plaintiff Vienna Metro's Motion for Attorneys' Fees and Costs is GRANTED.  Defendant Pulte is liable to Vienna Metro for attorneys' fees and costs in the total amount of $4,576,456.09.  It is further

ORDERED that Plaintiff's Motion for Leave to File an Amended Bill of Costs (Dkt. No. 243) is GRANTED.


The Clerk is directed to forward a copy of this Order to counsel of record.


ENTERED this 24th day ofAugust, 2011.


Alexandria, Virginia                                     _____/s/_____

                                                         Gerald Bruce Lee

                                                         United States District Judge